# SULLIVAN,

## DECEMBER TERM, 1851.

---

### WHITE *v.* HUNTER.

It is a well settled rule of law, as to all acts and contracts which are unlawful on account of their immorality, or their tendency to promote it, or because they are hostile to the public policy, that the parties thereto are regarded as being *in pari delicto*, and that in all such cases, the rule of law is, *potior est conditio possidentis*.

Money paid upon a contract, of the character before stated, cannot be recovered back by the party who paid it.

There is no sound distinction between the case of money paid, and that of land conveyed, upon such a consideration.

In such case, neither the grantor in his lifetime, nor his heir after his decease, can recover possession of the land conveyed, against the grantee.

Accordingly, where O. W. had been living in adultery or fornication, with one H. W., and the said O. W., being seized of a tract of land, conveyed it to one H., by a deed executed by himself and said H. W., and the object and purpose of the conveyance was to provide for the support of the said O. W. and H. W., during their lives, in the same unlawful intercourse, — it was *held* that O. W., if alive, could not maintain an action to recover possession of the land, against H., and that his son and heir, standing upon the right and title of his ancestor, as it existed at his decease, could not recover the same against the said H.

WRIT OF ENTRY, dated January 12th, 1849, brought to recover one-fifth part of a tract of land, situated in Cornish, in this county.

Plea, *nul disseizin.* The plaintiff proved that his father, Oliver White, had been in the occupation of the whole tract set forth in said writ for forty years; and was seized of the same until April 30th, 1845; and that he died on said premises, in De-

cember, 1848. He also proved that he was himself, one of the five children and legal heirs of Oliver; and that said Oliver died intestate.

The defendant then introduced a deed from Oliver White and Hannah White, to the defendant, dated April 30th, 1845, conveying said premises. He also introduced a bond, in the penal sum of $1000, from the defendant, to said Oliver, dated April 30th, 1845, and also, a mortgage bearing the same date, from the defendant and wife, to said Oliver, to secure the performance of the bond.

It appeared that the bond and mortgage were delivered at the same time that the deed was, and were the only consideration given for the deed, and that the defendant, immediately after the execution of the deed, bond and mortgage, entered upon and took possession of the premises, and in all things has fulfilled the conditions of the bond till the present time, and is now in possession of the premises.

In answer to this defence, the plaintiff offered to prove for the purpose of showing the deed from Oliver White, to the defendant, to have been void from the beginning, "that said Oliver White, and the person who signed the deed as Hannah White, had previously been living together in adultery, or fornication, and that the object and purpose of the transaction was to provide for the support of the said Oliver and Hannah, during their lives in the same unlawful intercourse." This evidence the court, for the purposes of this trial, ruled incompetent; and thereupon a verdict was taken by consent for the defendant, on which judgment was to be entered, or the verdict set aside, and a new trial granted, as the opinion of the court should be, upon the admissibility of said evidence.

*Cushing*, for the plaintiff.

The actual consideration of the deed was the bond and mortgage. The deeds were all made together, and were all one transaction, as much as if all were in one paper, *Collins* v. *Blantern*, 2 Wilson, 341; *Hindley* v. *Westmeath*, 6 B. & Cress., 200.

Deeds and bonds, made for illegal purposes, are void; not good for one purpose, and bad for others, but absolutely void. The plaintiff makes a perfect title. Here is no answer by the defendant, the *particeps fraudis.*

*Freeman,* for the defendant. ·

The defendant is in possession ever since the deed. The contract was an executed contract. The possessing of the deed and bond was the completion of the contract. Oliver White and Hunter are in *pari delicto. Howson* v. *Hancock,* 8 Term Rep., 577 ; *Perkins* v. *Eaton,* 3 N. H. Rep., 152.

The rule, that courts will not lend their aid to recover back money paid upon illegal contracts, is applicable to executed contracts. *White* v. *Franklin Bank,* 22 Pick. Rep., 181 ; *Worcester* v. *Eaton,* 11 Mass. Rep., 375. In such cases, the maxim is *potior est conditio defendentis.* The case in 11 Mass. Rep., 375, is almost like the present.

*Cushing,* in reply.

The deed of White to the defendant is void. All he has, then, is the possession of the land. The plaintiff is not *particeps criminis.* This is not a case of estoppel. The case of *Worcester* v. *Eaton,* cited by the defendant's counsel, is inconsistent with the English decisions.

WOODS J. Oliver White, it is conceded, was once the owner of the premises in question. Both parties claim to have derived title from him. The defendant claims under a deed from said White, duly executed, acknowledged and recorded, in virtue of which he entered and took possession of the premises.

The plaintiff makes title to the premises, as son and heir of Oliver White, and to avoid the effect of the deed to the defendant, claims that the same was given upon an illegal and immoral consideration, being given for the purpose of upholding and promoting the unlawful and immoral conduct, and facilitating the illicit intercourse of Oliver White, and, the so called, Hannah White.

White *v.* Hunter..

It is claimed that the deed of Oliver White is invalid, for the reason that it rests upon an immoral consideration, and the transaction, out of which it grew, is against public policy. And no doubt exists that the consideration is as vicious and unlawful as it is claimed to be.

It appears, however, that in the transaction thus characterized, White the plaintiff's ancestor, was *particeps criminis* ; that he and the defendant were *in pari delicto* ; at any rate, that White was not the least guilty of the two, in the purpose in view ; in fact, that they both participated in the making of the contract, and that they were equally guilty of the unlawful design charged, and of entering into the unlawful arrangement, for the purpose of promoting the immoral and unlawful end in view. Upon this ground, the judge, in the court below, ruled that the immorality and illegality of the consideration could not be shown, by the plaintiff, to defeat the deed and enable the plaintiff to dispossess the defendant.

The question is, whether that ruling was correct.

The plaintiff stands upon the right and title of his ancestor, as it existed at his death, and can recover only in case his ancestor could. If his ancestor had no title which he could enforce, then none descended to the heir. Oliver White if living could not, we conceive, recover the possession of the land as against the defendant. The defendant showed a deed, from Oliver White, admitted once to have been the owner of the land, duly executed, and himself in possession under the deed. The object of the action is to recover back the possession of the land ; and this, too, upon showing that Oliver White and the defendant, are equally guilty of combining for the promotion of the immorality and crime of the unlawful cohabitation of said Oliver and Hannah. Mere want of consideration, where a consideration is expressed in the deed, is not enough to defeat a deed as between the parties, and cannot be shown for that purpose. *Morse* v. *Shattuck*, 4 N. H. Rep., 229. In fact, nothing but the immorality and illegality of the consideration, is made the ground for defeating the defendant's deed, and of recovery. And we think the case is precisely analogous, in principle, to that of the payment of money upon an

immoral or illegal consideration, in relation to which nearly the whole current of authorities, both English and American, hold that when the parties are found to be *in pari delicto*, the money so paid cannot be recovered back. In such case the clear and well settled doctrine is that *potior est conditio possidentis*.

In *Howson* v. *Hancock*, 8 D. & E., 575, Lord *Kenyon* said, " There is no case to be found where, when money has been actually paid by one of two parties, upon an illegal contract, both being *particeps criminis*, an action has been maintained to recover it back again." And in *Vandyck & al.* v. *Hewett*, 1 East 98, it is said, that " the rule has been settled, at all times, that when both parties are *in pari delicto, potior est conditio possidentis*."

The language of Lord *Mansfield*, in *Smith* v. *Bromley*, Doug., 696, note, is this : " If the act is of itself immoral, or a violation of the general laws of public policy, then the party paying, shall not recover his action; for when both parties are equally criminal against general laws, the rule is *potior est conditio defendentis*.

In *Lowry* v. *Bourdieu*, (Doug., 467,) the same distinguished judge said, " he desired it might be understood that the court held that, in all cases where money has been paid on an illegal consideration, it cannot be recovered back, except in cases of oppression, where the parties are not *in pari delicto*."

Mr. Comyns, in his treatise on contracts, lays down the doctrine that " when money has been paid, upon an illegal contract, it is a general rule, that if the contract be executed, and both the parties are *in pari delicto*, neither of them can recover from the other, the money so paid. 2 Com. on Contracts, 109. See also, *Browning* v. *Norris*, Cowp. Rep., 790 ; *Steers* v. *Lashley*, 6 D. & L., 61 ; *Brown* v. *Twiner*, 7 do., 630 ; *Clark* v. *Shee & al.*, Cowp., 197 ; *McCullum* v. *Gonslay*, 8 Johns. Rep., 113 ; *Inhabitants of Worcester* v. *Eaton*, 11 Mass. Rep., 368,

*Wilde, J.*, in *White* v. *Franklin Bank*, 22 Pick. Rep., 181, remarks upon the rule of law in question thus : " They (the defendant's counsel,) insist that when money has been paid, by one of two parties to the other, on an illegal contract, both be-

ing *particeps criminis,* no action can be maintained to recover it back. This rule may be correctly stated, in respect to contracts involving moral turpitude, but where the contract is merely *malum prohibitum,* the rule must be taken with some qualifications and exceptions." The exceptions and distinctions suggested and approved by him, are those found in 2 Comyn on Contracts, 109.

*Babcock* v. *Thompson,* 3 Pick. Rep., 446, was an action of assumpsit, for money had and received, to recover back money lost at gaming. Chief Justice *Parker* delivered the judgment of the court. "We have no doubt," said he, "that, according to the general policy and laws of this commonwealth, all gaming is unlawful; and the plaintiff cannot maintain his action where he is obliged to show his illegal act, as the foundation for a recovery. This was pretty fully considered and settled in *Worcester* v. *Eaton,* and we see no reason to change the opinion there expressed."

In *Burt* v. *Place,* 6 Cowen's Rep., 431, the case was that the plaintiff conveyed to the defendant a small parcel of land for the consideration of $300, as specified in the deed, in money, but in fact the defendant paid for it ten dollars in cash, and agreed to pay $240 in specific articles, and was to retain the remainder of the prices for assisting the plaintiff in defending a lawsuit, then pending before a justice. The defendant sold the land for $250, and the action was brought to recover the value of the land, or the money received upon the sale of it, by the defendant. The plaintiff assisted in defending the suit, but was not a licensed attorney. The objection to the plaintiff's right of recovery was founded on the illegality of the agreement between the parties, a part of the consideration being for maintenance. *Savage, C. J.,* delivered the judgment of the court. "Maintenance," said he, "being prohibited by statute, and a part of the consideration being therefore illegal, this was sufficient to vitiate the contract. The main question then is, can money paid or received upon an illegal contract, be recovered back? The general rule of law is that it cannot, where it is paid upon an illegal consideration, and both parties are equally criminal." "The

contract was both *malum in se,* and prohibited by statute ; and although it is against conscience, for the defendant to keep the plaintiff's money, the court will not lend its aid to enable the latter to recover back money thus illegally paid."

In *Denton* v. *English,* 2 Nott & McCord, 581, it was decided that an executed contract, founded on an immoral consideration is binding on the parties at common law.

The language of the court in *Roby* v. *West,* 6 N. H. Rep., 285, is thus : " the parties stand then, *in pari delicto,* and in such a case, the illegality of the contract renders it void." " The principle, that no court shall aid men who found their cause of action upon illegal acts, is not only a well settled, but a most salutary principle. It is fit and proper, that those who make claims which rest upon violations of the law, should have no right to be assisted by a court of justice.

According to the authorities, then, it would seem to be well settled that in reference to all acts or contracts, which are unlawful on account of their immorality, or their tendency to promote it, or because they are hostile to the public policy, the parties thereunto, are regarded as being *in pari delicto.* And in all all such cases the rule of law is *potior est conditio defendentis.*

And so, upon the authorities cited, it would seem also to be quite clear, that if this were an action to recover back money paid by one of two parties upon a contract, of the immoral and illegal character of the one under consideration, the action could not be maintained upon the principles already stated.

In the case of money thus paid, it passes into the possession of the party, upon a consideration, or agreement, or transaction, unlawful for immorality, or as being against public policy, for which cause the law will not lend its aid to recover it back. The title to the money passes well enough, as against the party guilty of participating in the crime of immorality, made the ground of recovery, or any other party claiming simply by virtue of his title. In other language the party thus guilty, thus *particeps criminis,* thus *in pari delicto,* will not be listened to, when he alleges and offers evidence of his own criminality, or immorality, and turpitude as a ground upon which to establish a claim of right gainst another, in a court of justice.

White *v.* Hunter.

Courts of justice will not take cognizance of the claims of such parties, based upon such grounds, but will leave them to be settled by themselves. Such parties are regarded, in reference to transactions of the character under controversy, as not being within the protection of the law, and as not being entitled to redress by the aid of the courts of justice like other parties, but are left to suffer the consequences of any pecuniary loss or suffering, brought upon themselves by such illegal and immoral acts without any legal redress, as a punishment for their wrongs, and to deter others from lending themselves to the commission of similar vices; 11 Mass. Rep., 378. Nor can it make any possible difference, whether it be the possession of land or of money, that may be sought through the aid of the court. The title and claim to each, in the case supposed, must necessarily stand upon the same footing. The aid of the court would as soon be lent to a party for the one as for the other purpose. In the case supposed, of money paid, the possessor has acquired title and possession, upon an illegal or immoral consideration, and but for the fact that the claimant has participated equally in the wrong, he might well recover it of the possessor; but for that reason, simply, the court will not, as we have seen, aid or assist him to re-possess himself of his money.

So in relation to the possession of land: the law will not aid a demandant, under like circumstances, in the attempt to re-possess himself of it, in a case in which he has, as far as he may, parted with his title and possession to the tenant.

We see no principle upon which to hold, that any sound distinction exists, between the cases of money and land, in respect to the claims of parties to the aid of the court, for the redress of wrongs, in the case supposed.

It would be equally against sound policy to aid a party seeking redress, guilty of illegality or immorality, in the one case as in the other.

The case of the *Inhabitants of Worcester* v. *Eaton,* 11 Mass. Rep., 368, is a decision directly in point, sustaining the opinion expressed in this case. We have examined the reasoning in that case and see no ground to question its soundness. It is there

said that " there must be a distinction between a conveyance of land and money paid on such a consideration, (which was the composition of a felony,) or Betsey Flagg (the grantor) could not, on this ground avoid her deed to Fiske and Hudson, by entry or action, so as to convey any title to the demandant. Such a distinction was attempted in the argument, but we find no foundation for it. A deed of bargain and sale, signed, sealed and delivered, acknowledged and recorded, is an actual transfer of the land to the grantee, as much as the delivering over of a sum of money, or of a personal chattel is a transfer of either of those."

It was said, at the argument, that the doctrine of that case is in conflict with the English cases. No cases have been cited, however, which we regard as being inconsistent with it, nor have we been able to discover any.

On the whole, we are satisfied that the ruling of the court rejecting the evidence offered by the plaintiff, was correct.

*Judgment on the Verdict.*